**STATE of Tennessee, Appellee,**

v.

**John George KAIN, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 15, 2000.

Application for Permission to Appeal Denied by Supreme Court July 17, 2000.

Jerry H. Summers, Summers & Wyatt, P.C., Chattanooga, TN, for appellant.

Paul G. Summers, Attorney General & Reporter, Erik W. Daab, Assistant Attorney General, Nashville, TN, William H. Cox, III, District Attorney General, Dean C. Ferraro, Assistant District Attorney General, Chattanooga, TN, for appellee.

### OPINION

ALAN E. GLENN, Judge.

Following a bench trial in the Hamilton County Criminal Court, the defendant, John George Kain, was convicted of driving under the influence of an intoxicant. The trial court sentenced the defendant to eleven months and twenty-nine days, with all but forty-eight hours suspended, and placed the defendant on unsupervised probation for the balance of the sentence. The defendant was ordered to pay a fine of $360 and to attend DUI school. His driver's license was suspended for one year. He timely appealed to this court, arguing that: (1) he should have been allowed to present the defense of involuntary intoxi-cation; (2) the court should have suppressed evidence that he refused to submit to the blood-alcohol test; and (3) he should have been given credit for pretrial detention.

Based upon our review, we affirm the conviction but modify the sentence to allow the defendant seven hours of jail credit.

### FACTS

Around midnight on September 6, 1996, Officer Robert Starnes, of the Hamilton County Sheriff's Department DUI Task Force, stopped the defendant's motor vehicle because it had not stopped at a stop sign. When Officer Starnes approached the defendant, he smelled alcohol on the defendant; the defendant's eyes were bloodshot and glassy; and he was unsteady on his feet. Lieutenant Ken Taylor arrived on the scene to assist Officer Starnes. A field sobriety test was administered to the defendant during which he swayed, staggered, and fell over. Officer Starnes had to discontinue this test, and could not administer any additional tests, because he was afraid the defendant might injure himself. The defendant was placed under arrest for driving under the influence of an intoxicant.

At the time of his arrest, the defendant was thirty-six years old and working for a Chattanooga bank as a mortgage loan originator. Having been concerned for some period of time about being overweight, the defendant had consulted a Rome, Georgia, weight reduction doctor in July 1996. Following the recommendation of that doctor, the defendant began taking the drugs Bontril and Tranxene, popularly known as "fen-phen," hoping these would help him lose weight. According to the defendant, his doctor did not warn him of the effect of combining these drugs with alcohol, and the labels, themselves, did not contain any such warning.

On the evening he was arrested, the defendant had been to a Chattanooga restaurant to interview for a position with

another mortgage company. According to his testimony, he had three drinks from 6:30 to about 10:00 p.m.[1] At about 11:15 or 11:30 p.m., he took two of the diet pills. This was the first time he had ingested the diet pills and alcohol in combination. Shortly thereafter, the meeting ended, and the defendant began driving to his home.

After his arrest, the defendant was taken to the police station and asked to submit to a test to determine the alcohol content of his blood. Although he refused to take the test, he did sign the implied consent form.

## I. ANALYSIS

The defendant presents several bases for relief in this appeal:

### A. Involuntary Intoxication as a Defense

■ The defendant argues that, for both factual and legal reasons, the trial court should have recognized involuntary intoxication as a defense. In this regard, he makes two claims. The first is that the defense of involuntary intoxication is applicable to all criminal prosecutions and is not specifically excluded by the statutes proscribing driving under the influence. Additionally, he argues that even though driving under the influence is interpreted as a strict liability offense, involuntary intoxication can still be asserted as a defense, because, as a general defense, it "operates to relieve criminal culpability irrespective of the presence of intent."

The circumstances under which intoxication may be utilized as a defense are set out in Tenn.Code Ann. § 39–11–503, which provides in pertinent part:

(a) Except as provided in subsection (c), intoxication itself is not a defense to prosecution for an offense. However, intoxication, whether voluntary or involuntary, is admissible in evidence if it is relevant to negate a culpable mental state.

. . . .

(c) Intoxication itself does not constitute a mental disease or defect within the meaning of § 39–11–501. However, involuntary intoxication is a defense to prosecution if, as a result of the involuntary intoxication, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of the law allegedly violated.

(d) The following definitions apply in this part, unless the context clearly requires otherwise:

(1) "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body;

(2) "Involuntary intoxication" means intoxication that is not voluntary; and

(3) "Voluntary intoxication" means intoxication caused by a substance that the person knowingly introduced into the person's body, the tendency of which to cause intoxication was known or ought to have been known.

■ In Tennessee, the offense of driving under the influence of a drug or intoxicant is a strict liability offense. Thus, in *State v. Lawrence*, 849 S.W.2d 761 (Tenn. 1993), the DUI conviction was affirmed of the defendant who was found asleep, smelling of alcohol, in his pickup truck which was blocking a public gravel road:

We agree with the observation that "[a] motor vehicle is recognized in the law as a dangerous instrumentality when in the control of a sober person; in the control of a drunk, the dangerous instrumentality becomes lethal. Therefore ... the

---

1. The defendant testified at trial that he had had three drinks (scotch and water), but the night of his arrest, he told Officer Starnes that he had had two beers. When asked at trial why he told Officer Starnes two beers instead of three drinks, the defendant replied, "I have no idea."

court [should interpret] the drunk driving statute in a way that [keeps] drunks from behind the steering wheels of motor vehicles, even when the drunk need[s] 'to sleep it off.'" The fact that the Defendant chose to park his vehicle on a country road and sleep off the effects of the alcohol is immaterial. The road where the Defendant was located was a public road and we believe the "better policy is that a person should ascertain his ability to drive *before* climbing behind the wheel and terrorizing the roadways of this state ."

*Id.* at 765–66 (emphasis in original) (citations omitted).

Likewise, in *State v. Turner,* 953 S.W.2d 213, 215 (Tenn.Crim.App.1996), *perm. app. denied* (Tenn.1997), this court concluded that "by defining the offense of driving under the influence to encompass the mere physical control of a vehicle, the legislature clearly signaled its intention to create a crime imposing strict liability." Citing the Model Penal Code § 2.01 (1985), we held that a defendant, who, while intoxicated, seated himself behind the steering wheel of a stationary motor vehicle with the headlights turned on and the engine running, could be convicted of driving under the influence. Even though the vehicle had not moved, the defendant, by placing himself in physical control of the vehicle while he was intoxicated, committed the necessary voluntary act. *Id.* at 216. This court "has previously observed that there is no culpable mental state required for guilt of driving under the influence." *Id.* at 215.

The defendant's argument presupposes that intoxication resulting from the voluntary ingesting of alcohol and prescription drugs is "involuntary," so as to constitute a defense pursuant to Tenn.Code Ann. § 39–11–503. However, we do not agree with this supposition. The defendant testified that although he was a college graduate, he heard, for the first time while in the courtroom, that some drugs cannot be ingested together with alcohol. With the

law in Tennessee being that driving under the influence of a drug or intoxicant is a strict liability offense, a defendant whose intoxication results from knowingly ingesting a prescription drug and alcohol cannot avail himself of the involuntary intoxication defense. Under the circumstances of this case, we conclude, pursuant to Tenn.Code Ann. § 39–11–503(d)(3), that the defendant, having voluntarily ingested substances which he knew or should have known could result in intoxication, was "voluntarily" intoxicated.

Thus, our conclusion being that the facts of this case do not present a situation of involuntary intoxication, it is unnecessary for us to determine whether such a defense can be utilized against a charge of driving under the influence. *See generally* Philip E. Hassman, Annotation, *When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge,* 73 A.L.R.3d 195 (1976); *State v. Clarkston,* 963 S.W.2d 705, 711 (Mo.App. W.D.1998) ("[t]he fact that insulin is a prescription drug is, thus, not a defense to DWI if it, in fact, causes intoxication either alone or in combination with alcohol").

This assignment is without merit.

## B. Sufficiency of Implied Consent Form

■ The defendant argues that the trial court should have suppressed the fact that he refused to submit to a blood-alcohol test because the consent form utilized for the test was "vague and failed to inform him of the significant consequences of refusing such a test." The defendant made two timely motions to suppress the use of this form at his trial, but the motions were overruled.

Regarding implied consent, Tenn.Code Ann. § 55–10–406(a)(2) provides:

Any law enforcement officer who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alcoholic or drug content of the driver's

blood shall, prior to conducting such test, advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court. The court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if such driver was not advised of the consequences of such refusal.

The defendant argues that the explanation given to him regarding the consequences of either taking or refusing to take the test was inadequate because of its incompleteness. In this regard, we agree with the State that Tenn.Code Ann. § 55–10–406(a)(2) requires only that a law enforcement officer administering a test to determine the alcohol or drug content of a driver's blood must first advise the driver of the loss of license resulting from the refusal to submit to the test. Assuming the defendant's list of additional consequences of either taking or refusing to submit to this test is accurate, even it may not be a complete listing of all that can flow from such a test, if, indeed, a complete listing could be made. A common sense reading of this statute is that the word "consequences," as utilized in the second sentence of § 50–10–406(a)(2), refers to suspension of the operator's license, which is required by the first sentence of this section. Although the defendant argues a statutory rather than a constitutional basis for requiring that drivers be advised of the consequences of refusing to take the test, we disagree with the defendant's position that Tenn.Code Ann. § 55–10–406(a) requires advice other than that refusal to submit to the test will result in the suspension of the driver's license. We agree with the State that there is no constitutional basis for such a requirement. *See State v. Frasier,* 914 S.W.2d 467, 471 (Tenn.1996).

This assignment is without merit.

### C. Pretrial Jail Credit

The defendant also argues that the trial court should have ordered that he receive credit for the seven hours he spent in jail following his arrest. We agree. Tennessee Code Annotated § 40–23–101(c) provides for a defendant to receive pretrial jail credit:

The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

We are not persuaded, as the State argues on appeal, that the intention of the legislature in enacting Tenn.Code Ann. § 55–10–403(a)(1), requiring service of at least forty-eight hours for DUI, first offense, was that defendants not receive presentence jail credit. Nor can the holding in *State v. McNatt,* 693 S.W.2d 916, 917 (Tenn.Crim.App.1984), *perm. app. denied* (Tenn.1985), that sentences for DUI convictions be served "in consecutive fashion, day for day" be utilized to deny presentence jail credit. Accordingly, we hold that defendants convicted of driving under the influence, in violation of Tenn.Code Ann. § 50–10–401, are entitled to receive presentence jail credit, as authorized by Tenn.Code Ann. § 40–23–101(c). In this matter, defense counsel, as an officer of the court, advised that the defendant was in jail for seven hours prior to his release and the trial court agreed that this information could be put into the record in this fashion.

Accordingly, the sentence is modified to reflect that the defendant receive seven hours of jail credit. In all other aspects, the sentence is affirmed.

DAVID G. HAYES, Judge, and JOE H. WALKER, Special Judge, concur.