IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2004 Session

**STATE OF TENNESSEE v. KENNETH WAYNE BALL**

**Appeal from the Criminal Court for Greene County**
**No. 03CR018    James E. Beckner, Judge**

_____

**No. E2004-00501-CCA-R3-CD - Filed April 6, 2005**

_____

A Greene County jury convicted the Defendant, Kenneth Wayne Ball, of one count of driving under the influence, and the trial court sentenced him to 11 months and 29 days, of which 10 percent was to be served before eligibility for rehabilitative release programs. In this appeal, the defendant contests the sufficiency of the convicting evidence and contends that the trial court erred in denying his motion to suppress the results of a breathalyzer test despite the officer's lack of reasonable grounds to believe that he was intoxicated and despite the officer's failure to follow the 20-minute observation protocol. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Roger A. Woolsey, Greeneville, Tennessee, for the Appellant, Kenneth Wayne Ball.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Eric Christiansen, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On December 17, 2002, sometime after 1:00 a.m., Officer Travis Eggers was on routine patrol in Greeneville. He was assigned to the Commercial Vehicle Enforcement Division of the Tennessee Department of Safety and was certified to operate the Intoximeter 3000. At some point, of which Officer Eggers was uncertain, he was driving southbound on Interstate 81 followed by a tractor-trailer truck that the officer was escorting off the road and putting "out of service." The officer spied the defendant's vehicle, a pickup truck, stopped on the other side of the road with the flashers on, and he could make out the figure of a lone individual.

Officer Eggers did not stop at that time to investigate. He continued to escort the tractor-trailer truck for another seven miles, turned off at Exit 36, and waited to ensure that the tractor-trailer truck pulled off at a designated location. Officer Eggers then re-entered the interstate traveling north and pulled over at mile marker 43 where the defendant's truck was parked on the shoulder of the road. Officer Eggers testified that 14 minutes elapsed between the time he first saw the vehicle and when he returned to it.

Officer Eggers said that when he first arrived at the location of the defendant's vehicle, the defendant was standing at the side of the vehicle. When the officer got out of his cruiser, the defendant approached and advised that he was out of gas. Officer Eggers offered to help, and he testified that he did not independently verify whether the truck needed gasoline. The keys to the truck were in the defendant's right front pants pocket, and the officer saw no evidence of alcohol in or around the truck. The officer never asked or otherwise determined when the defendant's vehicle ran out of gas, did not check the hood to see if the engine was warm, and did not attempt to start the vehicle. During the course of further discussions, Officer Eggers began to suspect that the defendant was intoxicated.

The encounter between the men was recorded on the officer's in-car video camera, and the video tape was played for the jury. Officer Eggers testified that he arrested the defendant on the charge of driving under the influence and transported him to the Greene County weigh station to perform a breathalyzer test. The intoximeter printout registered a breath/alcohol level of 0.18.

Officer Eggers was the state's sole witness at trial. The defendant called William Grover, who resided in Jefferson City and had been a long-time acquaintance of the defendant. Mr. Grover testified that the defendant came to his house on December 16, 2002, at approximately 7:00 p.m. The defendant had with him a six-pack of beer; he consumed two and one-half bottles of beer while at Mr. Grover's residence and left three full bottles when he departed shortly after 10:00 p.m. Mr. Grover noticed nothing unusual about the defendant's sobriety when he arrived, and Mr. Grover testified that in his opinion the defendant had complete control of his faculties when he departed. Mr. Grover said that the defendant was hearing-impaired, and the evening that the defendant visited, the defendant complained of a cold or sinus ailment.

The defendant took the stand. He explained that Mr. Grover had extended an invitation to visit and that Mr. Grover had shown an interest in buying the defendant's truck. The defendant confirmed that he had a hearing problem stemming from his service in Vietnam and that on the evening he visited Mr. Grover, he had a cold and had been taking Afrin nasal spray and Nyquil. The defendant said that he had not been drinking before he arrived at Mr. Grover's house, and during his three-hour visit, he consumed two or three beers.

The defendant testified that on his way home and sometime after 11:00 p.m., his "vehicle just quit running" at mile marker 43. The defendant was uncertain of the source of the mechanical difficulty; the gas gauge on the truck did not register correctly, and the truck had a

history of the distributor's becoming corroded. The defendant also recalled that in trying to start the truck, the battery almost completely discharged.

The defendant got out of the truck, started walking up the highway, and tried to "flag a ride." When he was unsuccessful, he returned to the truck, got inside, and activated the flashers hoping to attract attention. By the time the officer pulled behind him, the defendant was again outside the truck on the left side. The officer's video tape that was played for the jury showed an incorrect date of November 17, instead of December 17. The time, however, on the tape evidently was accurate. It showed the officer arriving shortly after 1:00 a.m., which according to the defendant would have been approximately two hours and 15 minutes after his truck stopped operating.

The defendant testified that the officer made no inquiries regarding when the truck broke down and whether it would run. The defendant claimed that the officer also did not check the hood of the truck or try to start the vehicle. The officer did ask the defendant to submit to an intoximeter alcohol test, and the defendant said that he had no objections to complying with the request. Regarding his cold medicine, the defendant testified that his Afrin was in his inside coat pocket and that the Nyquil was in the truck. According to the defendant, he was suffering from sinus problems at the time, and he had taken some Nyquil approximately five to 10 minutes before the officer pulled up behind the truck.

On cross-examination, the defendant admitted that he first denied having had anything to drink when the officer asked him. Only after the officer pressed did the defendant admit drinking two or three beers earlier, but the defendant still did not mention the Nyquil. The defendant also admitted never mentioning to the officer any other possible problems with the truck, such as with the distributor. In terms of a low charge on the truck battery, the defendant agreed that the video tape showed the truck flashers operating at a normal rate.

When the state asked the defendant to account for his activities during the two hours and 15 minutes that he was stranded on the roadside, the defendant said that at first, he spent some time trying to get the truck to start. When it would not, the defendant started walking up the road because he "knew there was an exit and a gas station up the road at the next exit." The defendant testified that he never made it to the exit because his legs started hurting, and he returned to the truck. Along the way, the defendant threw up his hands at passing vehicles, but no one would stop.

Based on the evidence presented, the jury convicted the defendant of driving under the influence and set a fine in the amount of $500. The court approved the jury fine and set the defendant's release eligibility date at 10 percent of the required misdemeanor sentence of 11 months and 29 days.

## I. Evidence Sufficiency.

In his first issue, the defendant assails the sufficiency of the convicting evidence. He argues that the state failed to prove beyond a reasonable doubt that he was "driving" or "in physical control" of his truck while under the influence of an intoxicant.[1]

Our standard of review is a familiar one. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining sufficiency of the proof, the appellate court does not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

At the time of the charged offense in this case, Code section 55-10-401(a)(2) made it "unlawful for any person to drive or to be in physical control of any automobile" while the "alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more." Tenn. Code Ann. § 55-10-401(a)(2) (Supp. 2002).[2] The record before us does not indicate precisely under what theory the jury found the defendant guilty – either driving while intoxicated or being in physical control of a motor vehicle while intoxicated. Nonetheless, a general verdict is permitted when only one offense is at issue based upon a single criminal occurrence. *See State v.*

---

[1] The defendant couches his issue in terms of the trial court's error in failing to direct a judgment of acquittal in the case. The standard by which trial courts determine and appellate courts review a motion for judgment of acquittal, however, is essentially the same standard applied when determining the sufficiency of the evidence after a conviction. *See State v. Thompson*, 549 S.W.2d 943, 946 (Tenn. 1977); *State v. Anderson*, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994).

[2] Effective July 1, 2003, Tennessee Code Annotated section 55-10-401(a)(2) was amended to read: "The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more."

*Butler*, 108 S.W.3d 845, 850 n.3 (Tenn. 2003); *State v. Lemacks*, 996 S.W.2d 166, 171 (Tenn. 1999). The crime at issue is a "strict liability offense." *State v. Kain*, 24 S.W.3d 816, 818 (Tenn. Crim. App. 2000).

Regarding the driving-while-intoxicated mode of the offense, the defendant merely asserts that the state offered no evidence that he was "driving" at a time that he was intoxicated. The defendant reserves the bulk of his argument to the physical-control mode of the offense. By that mode of committing the offense, it is settled that the legislature intended "to remove from the inebriated the option of operating a vehicle." *State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). Correctly recognizing that our supreme court in *State v. Lawrence*, 849 S.W.2d 761 (Tenn. 1993), brought forth a "totality of the circumstances" test, the defendant insists that (a) he was not inside the truck when the officer arrived; (b) the keys were in his pocket, not the ignition; and (c) the vehicle was incapable of being driven or moved under its own power. The defendant, therefore, maintains that his conviction cannot stand.[3]

In *Lawrence*, a deputy discovered the defendant asleep behind the wheel of his truck that was parked in the road; the truck engine was not running, and the ignition key was in the defendant's pocket. The court developed a "highly factual" totality of the circumstances test, whereby the trier of fact should take into account factors including

> [1] the location of the defendant in relation to the vehicle, [2] the
> whereabouts of the ignition key, [3] whether the motor was running,
> [4] the defendant's ability, but for his intoxication, to direct the use
> or non-use of the vehicle, or [5] the extent to which the vehicle itself
> is capable of being operated or moved under its own power or
> otherwise.

*Id*. at 765. The court added that the "same considerations can be used as circumstantial evidence that the defendant had been *driving* the vehicle." *Id*.

In applying the test, the *Lawrence* court held that the defendant was in physical control of the truck. The court noted that the defendant "was inside of the vehicle, behind the wheel, and had possession of the keys[,]" that he "was alone in the truck and no one else was in the area[,]" and that it was "undisputed that, but for his intoxication, he had the present physical ability to direct the vehicle's operation and movement[, because he] could have at any time started the engine and driven away." *Id*. The *Lawrence* court also opined that the defendant

> could probably have been convicted of "driving," the alternative way
> of violating T.C.A. § 55-10-401. Although no one actually saw the
> Defendant driving his vehicle, the evidence amply supports the

---

[3] The defendant does not challenge the sufficiency of the evidence with respect to the elements of intoxication or of being on a public road.

conclusion that he did so. From the undisputed facts in the record, the inference may reasonably be made that the Defendant drove his vehicle while under the influence of an intoxicant.

*Id*. at 766.

In 2003, the supreme court in *State v. Butler*, 108 S.W.3d 845 (Tenn. 2003), refined the fifth *Lawrence* factor – the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise. The court "adopt[ed] the reasonably capable of being rendered operable standard in cases where[in] a defendant contests the element of physical control based upon alleged inoperability of the vehicle." *Id*. at 852. By that standard,

the proper focus [is] not narrowly on the "mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move." . . . [W]here "circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in" physical control of the vehicle.

*Id*. (quoting *State v. Smelter*, 36 Wash. App. 439, 444-45, 674 P.2d 690, 693 (1984) (defendant found intoxicated in his vehicle that was out of gas; conviction properly based on fact that defendant drove vehicle until it ran out of gas)).

Applying the *Lawrence* factors, as interpreted in *Butler*, the evidence is clearly sufficient to support the defendant's conviction based on physical control of the vehicle. It is undisputed that the defendant was the person driving the truck; no one else was involved in its operation. The defendant was found in close proximity to the vehicle. Although the truck keys were not in the ignition, a conviction based upon physical control does not "hinge" on that lone factor, just as "physical control does not hinge on whether the vehicle's engine is running or whether the vehicle is in motion." *Butler*, 108 S.W.3d at 851.

The defendant seems to suggest that because the officer did not engage in an investigation to independently determine if the vehicle was operational, the jury was thereby obliged to accept his testimony that the truck ran out of gas, that its battery was down, and that the truck had a history of developing a corroded distributor. We disagree. The jury was not obligated to find the defendant's testimony credible, and we are aware of no legal requirement that an arresting officer must verify whether the vehicle is operational. Moreover, even if the jury credited the defendant's testimony that the truck was out of gas, that fact does not negate the defendant's being in physical control of the truck. Per *Butler*, which found the reasoning of the Washington court in *Smelter* persuasive, the mechanical condition of the truck when it came to rest – out of gas – is not determinative. Instead, if the truck was "'where it was *and was performing as it was* because of the

defendant's choice, it follows that the defendant was in'" physical control of the vehicle. *Id.* at 852 (quoting *Smelter*, 674 P.2d at 693) (emphasis added in *Butler*); *see also State v. Roger Dale Bryan*, No. M2003-01366-CCA-R3-CD (Tenn. Crim. App., Nashville, July 7, 2004), *perm. app. denied* (Tenn. 2004). The defendant's choice to drive the truck until it ran out of gas does not provide an escape route from conviction in this case.

Last, the jury could have convicted the defendant based on a theory that the defendant, while intoxicated, had actually driven his truck until it came to the point of rest on the interstate. In view of the defendant's admission that he – and no one else – drove the truck on the road to the point where it was found, the jury reasonably could have found that he was intoxicated when he did so. *See Lawrence*, 849 S.W.2d at 766; *Roger Dale Bryan*, slip op. at 5.

Accordingly, we hold that the evidence is sufficient to sustain the defendant's conviction of driving under the influence.

## II. Results of Intoximeter Test.

In *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992), the supreme court held that as a foundation for admissibility of intoximeter test results, a testing officer must be able to address the following six points:

> We hold that the testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence (as) the result of the test given to the person tested.

*Id*. at 416. Pretrial, the defendant challenged the admissibility of the .18 intoximeter test results in his case, and the trial court conducted an evidentiary hearing. The defendant focused on the *Sensing* 20-minute observation requirement, and he argued then – as he does now – that Officer Eggers' testimony fails to establish that he observed the defendant for the required 20-minute period before having the defendant blow into the machine.

The defendant bases his argument on a comparison of the time noted when the defendant signed the implied consent form (3:11 a.m.) with the printout time shown on the intoximeter test results (3:29 a.m.). That comparison reveals an 18-minute time span, two minutes short of the required observation period. Even so, Officer Eggers testified and explained to the satisfaction of the trial court that his time references were based on the wall clock in the room, whereas the intoximeter's internal clock generated the time printed on the test results:

> THE COURT: How do I know that you had him under observation for 20 minutes or more? How do you know?
>
> THE WITNESS: By the times that was on the implied consent, I waited 20 minutes to give the test.
>
> THE COURT: By what watch or clock?
>
> THE WITNESS: By this clock, right here (indicating photograph).
>
> THE COURT: By the – You waited 20 minutes on that clock – On the clock that read 3:11 when you finished the implied consent, you looked at that clock for 20 minutes?
>
> THE WITNESS: True.
>
> THE COURT: Until it said – ?
>
> THE WITNESS: 3:31.
>
> THE COURT: 3:31?
>
> THE WITNESS: Correct.
>
> THE COURT: And then –
>
> THE WITNESS: We actually started observing him before 3:11. We filled out this implied consent.
>
> THE COURT: But when you went to the intoximeter, it printed out 3:29?
>
> THE WITNESS: Correct.

The defendant argues that Officer Eggers' testimony is uncertain and suspect. The trial court, however, found that the officer credibly testified that the 20-minute observation period had been satisfied based on the wall clock. We do not second-guess the trial court's credibility

determinations. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (questions regarding witness credibility and resolution of conflicts in the evidence are matters entrusted to the trial judge); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996) ("[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.").

We hold that the trial court did not err in admitting the results of the intoximeter test in this case.

### III.  Reasonable Grounds for Breathalyzer Test.

In his final issue the defendant argues that the officer did not have reasonable grounds to request that he submit to a breathalyzer test; therefore, he claims, the test results should have been suppressed on that basis.  The defendant predicates his argument on Code section 55-10-406(a)(1), which provides,

> Any person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood;  provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug, as defined in § 55-10-405.

Tenn. Code Ann. § 55-10-406(a)(1) (2004).

The defendant characterizes the record in this case as "void" of any testimony or evidence that would cause Officer Eggers to believe that the defendant was intoxicated.  The state counters that the video tape recording of the encounter between the defendant and Officer Eggers offers sufficient evidence and justification for the officer's request that the defendant submit to a breathalyer test.

We note that the defendant includes no citation in his brief to the record wherein the issue he raises was litigated or decided.  Our review of the record reveals that pretrial, the defendant filed a motion to suppress that alleged, *inter alia*, that the arresting officer did not have reasonable grounds to believe the defendant was intoxicated so as to request that he submit to a breathalyzer test.  That same motion also challenged whether the *Sensing* 20-minute observation requirement had been met.  However, when the suppression motion was litigated, the defendant evidently abandoned the claim regarding the existence of reasonable grounds to believe that he was intoxicated; at least, the transcript of the hearing does not reflect that the claim was pursued at that time.

Following conviction, the defendant filed a motion for new trial in which he re-alleged that the arresting officer did not have reasonable grounds to believe that he was under the influence of alcohol.  A minute entry appears in the record stating that the motion for new trial was

overruled on January 30, 2004.  No transcript of the new-trial motion hearing is included in the record; likewise no written order appears.

Accordingly, we are of the opinion that the defendant has waived appellate consideration of this issue on two grounds.  First, "[A] party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error."  Tenn. R. App. P. 36(a), Advisory Commission Cmts.  Second, it is well settled that when a party seeks appellate review, there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal.  *See State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993) (holding failure to include transcript precludes appellate review); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) (holding trial court's ruling presumed correct in the absence of an adequate record on appeal).  Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue.  *See State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).  Absent the necessary relevant material in the record, we decline to consider the merits of this issue.  *See* Tenn. R. App. P. 24(b).

## IV.  Conclusion.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE