IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 22, 2024 Session

## STATE OF TENNESSEE v. EUGENIO GOMEZ RUIZ

**Appeal from the Criminal Court for Knox County**
**No. 118388        Steven W. Sword, Judge**

_____

**No. E2023-01017-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Eugenio Gomez Ruiz, of furnishing alcohol to a person under twenty-one years of age, a Class A misdemeanor. The trial court sentenced the Defendant to eleven months and twenty-nine days, ordering that the sentence be suspended after service of six months in confinement. On appeal, the Defendant argues that the trial court erred (1) in finding that the crime is a strict liability crime and thereby erred in denying his requests for a jury instruction on mental states and to introduce evidence relevant to certain defenses; and (2) in sentencing him to serve six months in confinement. He also asserts that the State committed prosecutorial misconduct by charging him with a strict liability offense instead of one requiring a culpable mental state. Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Mary J. Newton (on appeal and at trial) and Loretta Cravens (at trial), Knoxville, Tennessee, for the appellant, Eugenio Gomez Ruiz.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joanie Stallard Stewart and Joe Welker, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

### A.    THE OFFENSE

Around 8:00 or 8:30 p.m. on Saturday, February 15, 2020, E.C.[1] and a friend met at El Mezcal Mexican Restaurant in Knoxville, Tennessee. Although the two were only nineteen years old, they knew the restaurant as "an easy place to get drinks [that was] super popular among college kids."

The girls sat in a booth and ordered alcoholic beverages from a server. As the girls sat in the booth talking, the Defendant, an employee of the restaurant, sat at the bar and watched them. When E.C.'s friend got up from the booth, the Defendant came and sat beside E.C. The Defendant went back to the bar when E.C.'s friend returned.

Around 10:30 p.m., the restaurant started to close. The Defendant motioned for the girls to join him at the bar. While they were at the bar, the Defendant directed another restaurant employee to pour alcoholic beverages for the girls. E.C. was given vodka in a wine glass. After E.C. finished that glass, the Defendant poured her at least two more glasses of vodka without her requesting a refill. When E.C. appeared reluctant to continue drinking, the Defendant repeatedly pushed the glass toward her to encourage her to drink. By the time E.C. and her friend left the restaurant, E.C. "was drunk . . . getting towards blackout."

### B.    TRIAL, SENTENCE, AND APPEAL

On December 16, 2020, a Knox County grand jury charged the Defendant with the Class A misdemeanor offense of "unlawfully furnish[ing] an alcoholic beverage to a person under twenty-one (21) years of age, to-wit: [E.C.], in violation of T.C.A. § 57-4-203[.]"

At the trial, which began on September 7, 2022, E.C. and her friend testified to the preceding facts. Additionally, Investigator A.J. Loeffler of the Knoxville Police Department testified about his investigation. Investigator Loeffler said that he was told the

---

[1]    As discussed below, the grand jury charged the Defendant with furnishing alcohol to a person under twenty-one years of age. However, it also charged the Defendant with the rape of E.C. The jury did not reach a verdict on this charge, and except for a sentencing issue raised by the Defendant, the rape charge is not otherwise at issue in this appeal. We nevertheless elect to refer to E.C. by her initials.

Defendant was a manager at the restaurant. The investigator obtained security videos from the restaurant, which corroborated the girls' version of events. The videos were played for the jury.

The Defendant did not testify on his own behalf. The restaurant owner, Arturo Leon Quezada, stated that he was the sole manager of the restaurant but was not there on the night of the offenses. Mr. Quezada said that the Defendant's job was to take payments, seat people, and help in the kitchen. He testified that the restaurant's policy was to always ask for the identification of anyone who ordered alcohol. He insisted that the servers were trained in the sale of alcohol and the signs of impairment.

Before the jury was charged, the Defendant asked the trial court to instruct the jury that he must have "acted intentionally, knowingly, or recklessly." The trial court denied the requested instruction, concluding that the Defendant was charged with a strict liability crime whose essential elements contained no mens rea requirement.

The jury found the Defendant guilty of furnishing alcohol to someone less than twenty-one years of age. On November 22, 2022, the trial court imposed a sentence of eleven months and twenty-nine days, and it suspended the sentence after the Defendant served six months in confinement. It also ordered that the custodial portion of the sentence be served at 75% before applying any rehabilitative credits.

On December 15, 2022, the Defendant filed a timely motion for a new trial. The trial court denied the motion on June 23, 2023, and the Defendant filed a timely notice of appeal twenty days later.

## ANALYSIS

In this appeal, the Defendant argues principally that the trial court erred in finding that the crime for which he was convicted is a strict liability offense. More specifically, he asserts that the trial court erred in denying his request to have the jury instructed on mental states and defenses to the crime and in not allowing him to present evidence that E.C. had previously shown identification that falsely identified her as legal drinking age. The Defendant also accuses the State of prosecutorial misconduct by charging him with a strict liability offense instead of one that required proof of a mens rea and allowed for an affirmative defense. Finally, he argues that the trial court abused its discretion by ordering that he serve a split-confinement sentence of six months.

We address each of these issues in turn.

## A.    Jury Instructions

The Defendant first argues that the trial court erred in instructing the jury on the essential elements of the offense of furnishing an alcoholic beverage to a person under twenty-one years of age.  He asserts that the crime required the State to prove that he knew that E.C. was underage—or that he was reckless with respect to this circumstance—and that he was entitled to a jury instruction including this mental state.  The State responds that the trial court properly instructed the jury because the plain language of the statute creating the offense does not require proof that the Defendant knew the person being served was underage.  It further argues that the offense is a strict liability offense.  We agree with the State.

### 1.    Standard of Appellate Review

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'"  *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022).  In this case, the Defendant argues that the trial court erred in denying his proposed jury instruction after determining that Tennessee Code Annotated section 57-4-203(b)(1)(A) was a strict liability offense.

"In criminal cases, a defendant has the right to a correct and complete charge of the law."  *State v. Bowman*, 327 S.W.3d 69, 93 (Tenn. Crim. App. 2009).  "The material elements of the charged offense should be described and defined in connection with that offense."  *Id.*  "Questions involving the propriety of jury instructions are mixed questions of law and fact," which this court reviews de novo with no presumption of correctness.  *State v. Benson*, 600 S.W.3d 896, 902 (Tenn. 2020); *State v. Hollon*, 671 S.W.3d 561, 564 (Tenn. Crim. App. 2023).

In reviewing the trial court's denial of the defense's proposed instruction, this court must examine the statute defining the offense to determine the elements of the offense.  Because this issue requires an interpretation of a statute, the issue is one of law that this court likewise reviews de novo with no presumption of correctness.  *State v. Jones*, 589 S.W.3d 747, 756 (Tenn. 2019).

### 2.    Elements of the Offense

"In Tennessee, '[t]he power to define criminal offenses and assess punishments for crimes is vested in the legislature.'"  *State v. Gabehart*, 691 S.W.3d 24, 26 (Tenn. Crim. App. 2024) (quoting *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017)).  Part of this

authority is the power to "declare and define conduct constituting a crime" by establishing the essential elements constituting the offense. *See State v. Lyons*, 669 S.W.3d 775, 788 (Tenn. 2023). In most cases, "our legislature has chosen to define criminal offenses through the combination of two components: a voluntary act and a culpable mental state." *Hollon*, 671 S.W.3d at 565 (citing Tenn. Code Ann. § 39-11-101(2)).

That said, "[n]ot every statutory crime contains a specific required mental state." *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014). Indeed, the United States Supreme Court has recognized that "public welfare" or "regulatory" offenses can seek to "impose a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." *Staples v. United States*, 511 U.S. 600, 606 (1994). Similarly, this court has observed that "[c]riminal strict liability is defined as a crime that does not require a mens rea element, such as traffic offenses and illegal sales of intoxicating liquor." *State v. Terry*, No. E2021-00406-CCA-R3-CD, 2022 WL 1288587, at *11 (Tenn. Crim. App. Apr. 29, 2022), *no perm. app. filed*.

As an example of a public welfare and regulatory offense, this court has acknowledged that "the offense of driving under the influence of a drug or intoxicant is a strict liability offense." *State v. Kain*, 24 S.W.3d 816, 818 (Tenn. Crim. App. 2000); *State v. Turner*, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996). We have also identified other strict liability crimes, including driving on a cancelled, suspended, or revoked license; the misdemeanor offense of leaving the scene of an accident; and violations of the since repealed Motor Vehicle Habitual Offender Act. *See State v. Ferrell*, No. M2009-01175-CCA-R3-CD, 2010 WL 27886, at *3 (Tenn. Crim. App. Jan. 7, 2010), *perm. app. denied* (Tenn. May 20, 2010); *State v. Sheppard*, No. M2002-01358-CCA-R3-CD, 2003 WL 21997737, at *3 (Tenn. Crim. App. Aug. 22, 2003), *no perm. app. filed*; *Terry*, 2022 WL 1288587, at *11-13. In each of these cases, a defendant may be found guilty of a crime by voluntarily engaging in the prohibited act, even without possessing a culpable mental state. *Cf. Turner*, 953 S.W.2d at 216 ("[A] minimum requirement for criminal liability is the performance of a voluntary act." (citing Model Penal Code § 2.01 (1985)).

The question of whether Tennessee Code Annotated section 57-4-203(b)(1)(A) requires a culpable mental state for criminal liability is one of statutory interpretation. As our supreme court has recognized, "[w]e generally interpret statutory terms according to their 'natural and ordinary meaning.'" *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024) (citing *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022)). In so doing, we ask "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Id.* (citation omitted); *Lawson v. Hawkins County*, 661 S.W.3d 54, 59 (Tenn. 2023) ("In interpreting statutory provisions, our role is

5

to determine how a reasonable reader would have understood the text at the time it was enacted."). As part of that endeavor, we may initially consider the statutory text, the broader statutory framework, and any relevant canons of statutory construction. *Deberry*, 651 S.W.3d at 925. Where the statute's meaning is clear and unambiguous after those considerations, "we enforce the statute as written." *Id.* (citation and internal quotation marks omitted).

Starting with the plain language of the statute, as we must, Tennessee Code Annotated section 57-4-203(b)(1)(A) provides as follows:

> Any licensee or other person who sells, furnishes, disposes of, gives, or causes to be sold, furnished, disposed of, or given, any alcoholic beverage to any person under twenty-one (21) years of age commits a Class A misdemeanor and shall be punished in accordance with § 39-15-404, as well as any other applicable section.

By its plain language, the statute simply does not require proof of a culpable mental state. It does not require the State to prove, for example, that the defendant was aware that the person being given alcohol is under twenty-one years of age. Instead, a reasonable reader of the statute would understand that criminal liability attaches upon the defendant's performing the voluntary act of selling or giving alcohol to the underage person.

A reasonable reader would also understand that the omission of a culpable mental state in section 57-4-203(b)(1)(A) is not an accident. Statutes are interpreted as a whole, and "[w]hen one statute contains a given provision, the omission of the same provision from a similar statute is significant to show that a different intention existed." *State v. Welch*, 595 S.W.3d 615, 622 (Tenn. 2020) (citation and internal quotation marks omitted).

The same statute under which the Defendant was convicted also creates other crimes that do require proof of a culpable mental state. For example, the statute criminalizes furnishing alcohol to "any person who is known" to habitually drink alcoholic beverages to excess or is a habitual user of narcotics or other habit-forming drugs. *See* Tenn. Code Ann. § 54-4-203(c)(1). The statute also prohibits a person under twenty-one years of age from "knowingly" making a false statement or exhibiting false identification "to the effect that the licensee is twenty-one (21) years of age or older." *Id.* § 54-4-203(b)(2)(B). As such, the reasonable reader, considering the statute as a whole, would understand that the essential elements of the Defendant's crime do not include a culpable mental state.

Indeed, this conclusion was already settled at the time of the Defendant's actions. More than a decade ago, this court considered this precise issue concerning a prior, almost identical version of this statute. *See State v. Holden*, No. W2009-00456-CCA-R3-CD, 2009 WL 4723405 (Tenn. Crim. App. Dec. 10, 2009), *no perm. app. filed*. In *Holden*, the defendant was convicted of selling beer to a minor in violation of "[t]he statute [which] states that '[a]ny licensee or other person who sells, furnishes, disposes of, gives, or causes to be sold, furnished, disposed of, or given, any alcoholic beverage to any person under twenty-one (21) years of age commits a Class A misdemeanor.' T.C.A. § 57-4-203(b)(1)(B) (2006)." *Id.* at *3. In examining whether the statute imposed strict criminal liability, this court held "that the offense is defined without reference to a mental state." *Id.* In rejecting an argument that the defendant had to be aware that the recipient was underage, we held that the defendant's mental state at the time of the offense "is not a required element of the offense." *Id.* This conclusion continues to hold under the virtually identical language of the statute today.

In pushing against this conclusion, the Defendant offers two arguments. First, he asserts that even if the statute does not expressly require a mental state, we should impute one pursuant to Tennessee Code Annotated section 39-11-301. In relevant part, that statute provides that "[a] culpable mental state is required within this title unless the definition of an offense plainly dispenses with a mental element." Tenn. Code Ann. § 39-11-301(b). It also provides that "[i]f the definition of an offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." *Id.* § 39-11-301(c). In essence, this statute "fill[s] in the gap" with a culpable mental state when the legislature did not plainly dispense with that element of a crime. *See Clark*, 452 S.W.3d at 296.

By its plain language, section 39-11-301 only applies to offenses "within this title," meaning Title 39. Because the regulatory offense prohibiting the furnishing of alcohol to persons under twenty-one years of age is codified in Title 57, the criminal code gap-filler statute simply does not apply to this offense by its own terms. We have recognized this principle for more than three decades. *See State v. McDonald*, No. 02C01-9206-CR-00126, 1993 WL 312698, at *3 (Tenn. Crim. App. Aug. 18, 1993) ("This section, by its own terms, applies only to offenses set forth in Title 39 of the Code. The offense of driving on a revoked license is in Title 55 of the Code. Therefore, [Tennessee Code Annotated section] 39-11-301 does not apply to the offense of driving on a revoked license."); *Terry*, 2022 WL 1288587, at *12 ("In accordance with the above line of cases for similarly defined traffic offenses, we conclude that section 39-11-301(b) does not apply to this offense."). This argument is without merit.

In a variation on this first argument, the Defendant notes that Tennessee Code Annotated section 39-11-102(b) provides that "Parts 1-6 of this chapter apply to offenses defined by other laws, unless otherwise provided by law." He surmises that this statute also requires this court to impute a mens rea to the regulatory offenses codified in Title 57. However, by its plain language, section 39-11-102(b) does not apply when another rule is "otherwise provided by law." Because the criminal code gap-filler statute otherwise provides that its application is limited to offenses codified within the criminal code, we conclude that the Defendant's argument is without merit.

Second, the Defendant argues that because the legislature decided that a violation of section 57-4-203 "shall be punished in accordance with § 39-15-404," it must necessarily have incorporated the mens rea or other affirmative defense from that other statute as well. He asserts that by using the word "punished" instead of the word "sentenced," the General Assembly "allow[ed] for a broader application of the referenced statute" than merely "look[ing] at the listed penalties for an offense." Respectfully, this argument is also without merit.

The plain language of section 57-4-203(b)(1)(A) simply provides that one who violates the statute "shall be punished in accordance with § 39-15-404." In its natural and ordinary meaning, the term "punishment" means "[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law." *Punishment*, *Black's Law Dictionary* (6th ed. 1990).[2] Indeed, in the four other instances in which the statute uses this term, the term is consistently used in reference to the consequences of violating the statute's various provisions. *See* Tenn. Code Ann. § 57-4-203(b)(2)(B)(i), -(b)(2)(B)(ii), -(j)(2), -(j)(4). We presume that "the legislature intended the same meaning throughout a statute for the same language used in the same context." *State v. Glavin*, No. M2020-01125-CCA-R3-CO, 2021 WL 3708724, at *2 (Tenn. Crim. App. Aug. 20, 2021), *no perm. app. filed*. We see no reason why that presumption would apply differently here.

No reasonable reader, fully competent in the language, would understand the term "punished," in this one instance, to import additional substantive elements or an affirmative

---

[2] As we observed above, in interpreting statutory language, we look to the natural and ordinary meaning and ask "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Williams*, 685 S.W.3d at 723 (citation and internal quotation marks omitted). In this task, we may consult "authoritative dictionaries published around the time of a statute's enactment." *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022). Although the courts may look to several different dictionaries, our supreme court has often looked to the sixth edition of *Black's Law Dictionary,* published in 1990, to construe our criminal statutes first enacted at that time. *See, e.g.*, *State v. Perry*, 656 S.W.3d 116, 128 (Tenn. 2022); *Deberry*, 651 S.W.3d at 927. As such, we do so here.

defense into the Defendant's conviction offense. Instead, a reasonable reader would understand that the term "punished" only references the sanctions for violating the statute. We agree with the State that if the legislature meant to import a mens rea from another statute, it would not have hidden the requirement behind an atypical construction of a single word. *Cf. Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

We hold that the trial court correctly instructed the jury on the essential elements of the crime for which the Defendant was convicted. The Defendant is not entitled to relief on this ground.

### 3. Mistake of Fact Defense

The Defendant also asserts that the trial court erred by failing to instruct the jury on the general defense of mistake of fact. The State argues that the Defendant was not entitled to the instruction because the charge was a strict liability offense. We agree with the State.

Tennessee Code Annotated section 39-11-502(a) (2018) provides that in certain circumstances, "ignorance or mistake of fact is a defense to prosecution if the ignorance or mistake negates the culpable mental state of the charged offense." By its plain language, the defense applies only to negate a culpable mental state. As such, where the essential elements of a crime do not include a culpable mental state, a mistake of fact defense simply has no application. Because the Defendant was charged with a strict liability offense, his argument that the jury should have been charged as to a mistake of fact defense is without merit. The Defendant is not entitled to relief on this ground.

### 4. Rule of Lenity

The Defendant maintains that even if this court were to rule against his reading of section 57-4-203(b)(1)(A), the rule of lenity would require the jury to have been instructed on the mental states of intent, knowing, and recklessness, the "reasonable belief" defense, and a mistake of fact defense as if he were being prosecuted under section 39-15-404. The State responds that the rule of lenity does not apply because the statutes are not ambiguous. We agree with the State.

Our supreme court has recognized that "when a penal statute remains grievously ambiguous or uncertain, the rule of lenity operates as a 'tie-breaker' and requires us to resolve the ambiguity in the defendant's favor." *Deberry*, 651 S.W.3d at 925 (cleaned up).

But it is also true that where no grievous ambiguity or uncertainty exists, the rule of lenity has no application. *Welch*, 595 S.W.3d at 623 n.4; *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) ("To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute." (cleaned up)).

In this case, the rule of lenity does not apply. First, the plain language of section 57-4-203 clearly and unambiguously covers the Defendant's conduct, and his arguments to the contrary do not create a grievous ambiguity. *Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011) ("A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute."). In addition, this court has previously held that the offense for which the Defendant was convicted is a strict liability offense. *See Holden*, 2009 WL 4723405, at *3. Consequently, for more than a decade before his actions in this case, the Defendant was on notice that this statute prohibited his conduct without proof of a culpable mental state. The statute, "either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). The Defendant is not entitled to relief on this ground.

## B.    PROOF OF FALSE IDENTIFICATION

The Defendant asserts that the trial court erred by refusing to allow him to introduce evidence that E.C. used an identification on a previous visit that falsely identified her as a person of legal drinking age. The State responds that such proof was irrelevant because the Defendant was charged with a strict liability offense. We agree with the State.

To be admissible, evidence must first be relevant. Tenn. R. Evid. 402. Evidence is "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Generally, "[t]he standard of review where the decision of the trial judge is based on the relevance of the proffered evidence under Rules 40l and 402 is abuse of discretion." *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997) (footnotes omitted). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. Reynolds*, 635 S.W.3d 893, 921 (Tenn. 2021) (citation and internal quotation marks omitted).

In this case, the Defendant maintains that proof of E.C.'s "fake ID" would have negated his criminal intent and was thus relevant to his defense. We respectfully disagree.

The trial court found, in part, that this evidence was not relevant, stating that because the offense was a "strict liability crime[, it] doesn't matter whether he knew or had reason to know that she was underage." *See Holden*, 2009 WL 4723405, at *3 ("The defendant's entire argument centers around his mental state at the time of the offense, which as stated supra, is not a required element of the offense. He acknowledges expressly that he did, in fact, sell beer to a person less than twenty-one years of age. As such, his argument is without merit and, even if factually true, would not entitle him to relief.").

Because we have held the crime was a strict liability offense that did not require a culpable mental state, the trial court applied the correct legal standard and reached a reasonable decision based upon the evidence in the case. As such, we conclude that the trial court acted within its discretion by excluding the proof of E.C.'s "fake ID." The Defendant is not entitled to relief on this ground.

## C. PROSECUTORIAL MISCONDUCT IN CHOOSING CHARGING OFFENSE

The Defendant asserts that the State abused its prosecutorial discretion by charging the Defendant under section 57-4-203(b)(1)(A), "a statute that is not in the criminal code, is silent on the mens rea of giving alcohol, and does not specifically list an affirmative defense," instead of charging him under section 39-15-404. The State responds that the Defendant has waived this issue by failing to object contemporaneously and by failing to include the issue in his motion for a new trial. We agree with the State.

Ordinarily, before a party can challenge the admission of evidence on appeal, the party must have preserved the issue in the trial court. *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *3 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*. To preserve an issue, the party should first assert a timely objection identifying a specific ground. The party then must later raise that issue in a motion for a new trial. Otherwise, the party waives plenary review of the issue on appeal. *See id.* These principles apply, of course, to claims of prosecutorial misconduct. *See State v. Self*, No. E2014-02466-CCA-R3-CD, 2016 WL 4542412, at *56 (Tenn. Crim. App. Aug. 29, 2016) ("In order to preserve an issue regarding prosecutorial misconduct, a defendant must make a contemporaneous objection at the trial."), *perm. app. denied* (Tenn. Jan. 19, 2017).

In this case, the Defendant did not object to the alleged prosecutorial misconduct in the trial court. Nor did he raise any such issue in his motion for a new trial. As such, the Defendant has waived plenary review of this issue on appeal. He may obtain relief for this issue, if at all, under the standards governing plain error review. *See Howard v. State*, 604 S.W.3d 53, 62 (Tenn. 2020).

Importantly, our authority to review unpreserved issues for plain error is discretionary and must be "sparingly exercised." *See State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). We respectfully decline to exercise that discretion for two reasons.

First, the Defendant did not request that we conduct plain error review, and he did not argue or analyze any of the factors that could justify plain error relief. *Enix*, 653 S.W.3d at 701 (setting forth criteria for plain error review). "To be clear, a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." *State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *3 (Tenn. Crim. App. Oct. 30, 2023) (citing Tenn. R. App. P. 27(a)), *no perm. app. filed*. Because the Defendant bears the burden of showing an entitlement to plain error relief, "his failure to request this relief necessarily weighs against any such consideration on our own." *State v. Gooch*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 (Tenn. Crim. App. June 3, 2024), *perm. app. denied* (Tenn. Nov. 20, 2024).

Second, and more importantly, the State specifically argued in its response brief that the Defendant waived the issue by failing to raise it in the trial court. Despite being notified that his issue may be waived because the issue was not presented and preserved in the trial court, the Defendant failed to respond to this argument or otherwise request plain error review in his reply brief. "Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief." *Thompson*, 2023 WL 4552193, at *5. Because no such circumstances exist here, we respectfully decline to consider plain error relief on our own. The Defendant is not entitled to relief on this ground.

### D.    SENTENCING

Finally, the Defendant asserts that the trial court abused its discretion in sentencing him to serve six months in confinement. In support of this assertion, the Defendant maintains that the trial court erred by allowing E.C. to give a victim impact statement at the sentencing hearing, misapplying an enhancement factor, and failing to weigh various mitigating factors appropriately. He also argues that the court incorrectly relied upon Tennessee Code Annotated section 57-4-203(j)(1) to order that he serve six months in confinement.

The State responds that even if the trial court erred by allowing E.C. to give a victim impact statement, the error was harmless. The State also asserts that the sentence imposed

by the trial court "was consistent with the Sentencing Act and other statutory provisions relevant to the [D]efendant's sentencing." We agree with the State.

### 1. Background

During the sentencing hearing, the State submitted the Defendant's presentence report as an exhibit and called E.C. to provide a victim impact statement. The Defendant objected to her being classified as a "victim." However, the trial court overruled the objection, determining that E.C. qualified as a victim because she was an underaged person to whom the Defendant served alcohol.

E.C. testified that her memory of the night was limited. She was terrified when she watched the security video and saw how many times the Defendant "tried to get me to take shots of Vodka, pushing the glass closer to me, to my mouth, when I was clearly feeling sick[.]" E.C. also recounted that the Defendant later raped her in the restaurant's restroom, and she explained to the court the significant effects that the Defendant's conduct had on her.

The trial court stated that the sentence would be consistent with the purposes and principles of sentencing. It applied enhancement factor (3), finding that the Defendant served alcohol to more than one victim. In mitigation, the court noted the Defendant's employment, attendance at court appearances, and lack of prior criminal history.

The trial court stated that because the jury did not convict the Defendant on the rape charge, "I don't think it'd be appropriate to consider that this was a rape." Nevertheless, the trial court found that not only was the Defendant providing alcohol to an underage person, but he "was pretty darn close to forcing it. He was taking her hand and pushing the glass to her mouth repeatedly[.]" The trial court opined that the Defendant was a "predator" who was intentionally trying to get E.C. "intoxicated so she would make bad decisions[.]"

The trial court ruled that the Defendant seriously violated the statute by repeatedly giving E.C. alcohol despite her apparent reluctance. Accordingly, it held that confinement was necessary to avoid depreciating the seriousness of the offense. Additionally, the trial court found that confinement would serve as a "deterrent, certainly, to all the other people in El Mezcal Restaurant who are giving these kids alcohol." The trial court also questioned the Defendant's potential for rehabilitation, noting that he was still employed at the restaurant and saying, "I don't suspect [the Defendant] learned anything from this."

13

The trial court considered Tennessee Code Annotated section 57-4-203(j)(1), which provides:

> Any person, firm or corporation who violates any provision of parts 1 and 2 of this chapter is guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000); and, in the discretion of the court, imprisoned not less than thirty (30) days, nor more than six (6) months, and each violation constitutes a separate offense.

The trial court sentenced the Defendant to eleven months and twenty-nine days, with the sentence being suspended to probation after serving six months in confinement. The court also ordered that the custodial portion of the sentence be served at 75% before applying any rehabilitative credits.

### 2. Standard of Appellate Review

This court has applied the standard of appellate review set forth in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012) to review misdemeanor sentences. *See, e.g.*, *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *2 (Tenn. Crim. App. Apr. 23, 2024), *perm. app. denied* (Tenn. July 17, 2024). Under the *Bise* standard, we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 707. As such, we will uphold a sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. This standard of review also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

### 3. Victim Impact Statement

The Defendant first asserts that the trial court erred by allowing E.C. to give a victim impact statement at the sentencing hearing. He explains that because E.C. went to the restaurant that night to obtain alcohol even though she was underage, she should not be considered a "victim" of the offense. Additionally, he complains that E.C.'s testimony at the sentencing hearing "was rife with allusions to a sexual assault a jury did not convict on." We respectfully disagree that the trial court erred in allowing E.C. to be heard at the Defendant's sentencing hearing.

14

A victim's right to be heard at a defendant's sentencing hearing is protected by several provisions of law. For example, as part of the original 1989 Criminal Sentencing Reform Act, the General Assembly provided that victims could submit a statement as part of the presentence report and that trial courts may allow the victim to testify at the sentencing hearing. *See* Tenn. Code Ann. §§ 40-35-207(a)(8); -209(b) (2019). After confirming a victim's right to make an impact statement and testify at the sentencing hearing the next year, *see* Tenn. Code Ann. § 40-38-103(a)(2), the legislature enacted the Victim Impact Statement Act in 1993. *See generally* Tenn. Code Ann. §§ 40-38-201 to -208 (2019). This act created a formal process for a victim to submit an impact statement to the sentencing court for consideration at a defendant's sentencing. It also defined the term "victim," in part, as meaning "an individual who suffers direct or threatened physical, emotional or financial harm as the result of the commission of a crime." Tenn. Code Ann. § 40-38-203(1).

Five years later in 1998, the people of Tennessee amended our constitution to protect certain rights of victims of crime. In part, Article I, section 35 of our constitution guarantees victims of crime "[t]he right to be heard, when relevant, at all critical stages of the criminal justice process as defined by the General Assembly." The General Assembly has since declared that the defendant's sentencing hearing is one of those critical stages. Tenn. Code Ann. § 40-38-302(2)(C) (2019). It has also defined the term "victim" in this context as being "[a] natural person against whom a crime was committed." Tenn. Code Ann. § 40-38-302(4)(A)(1).

Thus, Tennessee has long afforded victims "a broad right to inform the trial court in non-capital sentencing hearings of the effect of the Defendant's crime upon their lives." *State v. Sweet*, No. E2008-00100-CCA-R3-CD, 2009 WL 2167785, at *21 (Tenn. Crim. App. July 21, 2009) (citations omitted), *no perm. app. filed*. As such, "[a] trial court may consider this evidence about the nature and circumstances of this crime in determining an appropriate punishment." *State v. Ring*, 56 S.W.3d 577, 583 (Tenn. Crim. App. 2001). However, "the trial court's consideration must be limited to a rational inquiry into the culpability of the defendant" and not represent "an emotional response to the evidence." *Id.* at 583-84 (citing *State v. Nesbit*, 978 S.W.2d 872, 892 (Tenn. 1998)).

Although the Defendant argues that E.C. was not a "victim," we respectfully disagree. On the contrary, E.C. belongs to the class of persons the statute was specifically designed to protect, and the Defendant plainly directed his conduct toward her. Because she is a natural person against whom the crime was committed, E.C. certainly qualifies as a "victim" with a right to be heard at the Defendant's sentencing hearing. The trial court properly allowed E.C. to be heard in this case.

We also respectfully disagree that the trial court erred in allowing E.C. to be heard on the impact that the alleged rape had on her. A victim impact statement that is relevant and reliable may be considered in assessing "enhancing or mitigating factors and/or any other sentencing consideration." *Ring*, 56 S.W.3d at 583. The court may then determine the appropriate weight to accord the victim impact evidence, if any, as it imposes a sentence. *State v. Blackhurst*, 70 S.W.3d 88, 95 (Tenn. Crim. App. 2001).

In this case, E.C.'s statement discussed how the entire series of events that night continued to affect her. In part, she explained the terror she felt rewatching the events on the surveillance video, including the Defendant's encouraging her to consume more alcohol. She also described what she felt when she realized what was happening during the alleged rape and the emotional toll that these actions have had on her since that time.

According to E.C., the alleged rape was not a wholly separate event from the Defendant encouraging her to consume alcohol. Instead, she described it as being a direct result of his earlier actions, such that the earlier events and the Defendant's later conduct were logically connected in time and place. Thus, the court acted within its discretion to allow E.C. to be heard on the larger course of events, as her statement was arguably relevant to "a rational inquiry into the culpability of the defendant." *Ring*, 56 S.W.3d at 583.

We also respectfully disagree that the trial court should not have heard from E.C. simply because the jury was unable to reach a verdict on the rape charge. A defendant need not be convicted of a crime before his or her prior criminal behavior may be considered during sentencing. *See State v. Carico*, 968 S.W.2d 280, 288 (Tenn. 1998). Indeed, so long as the defendant's prior criminal behavior is proven by a preponderance of the evidence, a trial court may consider the prior behavior in sentencing even if the defendant has been acquitted of the conduct. *See State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000). As such, the trial court properly allowed E.C. to present relevant victim impact evidence despite the jury's inability to reach a verdict on some of the charges.

That said, a trial court's decision to hear relevant impact evidence is separate from the weight it gives to that evidence. *See Blackhurst*, 70 S.W.3d at 95. Here, the trial court allowed E.C. to be heard, but it twice noted that it was not considering any facts relating to the alleged rape. Indeed, the trial court never mentioned E.C.'s victim impact statement when sentencing the Defendant. As such, we conclude that the trial court committed no error in allowing E.C. to be heard at the Defendant's sentencing hearing. The Defendant is not entitled to relief on this ground.

16

### 4. Mandatory Split-Confinement Sentence

The Defendant maintains that the trial court incorrectly relied upon Tennessee Code Annotated section 57-4-203(j)(1) to order a custodial sentence in this case. The Defendant asserts that this section does not apply because Tennessee Code Annotated section 57-4-203(1)(A) directly references Tennessee Code Annotated section 39-15-404 for punishment. The State responds that the Defendant ignores the remaining language of section 57-4-203(j)(1) that anyone convicted of violating the section "shall be *punished* in accordance with § 39-15-404, as well as any other applicable section." (emphasis added.) Again, we agree with the State.

By its unambiguous and plain language, the statutory punishment for the Defendant's crime includes both the punishment available under section 39-15-404 and the punishment available under "any other applicable section." Tenn. Code Ann. § 57-4-203(b)(1)(A). At least one "other applicable section" for punishment is set forth in subsection (j)(1), which by its plain terms applies to the violation of "any provision of parts 1 and 2" of Title 57, Chapter 4. *See* Tenn. Code Ann. § 57-4-203(j)(1). Because the Defendant's conviction represents a violation of a provision of Part 2, the General Assembly could not have been more clear that the punishment provisions in both sections 39-15-404 and 57-4-203(j)(1) apply to the Defendant's conviction.

As such, not only was the trial court within its discretion to consider the mandatory confinement provisions of subsection (j)(1), it was *required* to do so. The Defendant's argument that his punishment is limited to section 39-15-404 is wholly without merit and contrary to the statute's plain language. He is not entitled to relief on this ground.

### 5. Length of Split-Confinement Sentence

Finally, the Defendant asserts that even if confinement was mandatory, the trial court abused its discretion by imposing the maximum period of six months. The State responds that the length of confinement is authorized by both section 57-4-203(j)(1) and by Tennessee Code Annotated section 40-35-103(1) (2019) and that the trial court acted within its discretion in affixing the length. We agree with the State.

Trial courts have "great flexibility in fashioning a misdemeanor sentence." *State v. Webb*, 130 S.W.3d 799, 834 (Tenn. Crim. App. 2003). When a trial court imposes a sentence for a misdemeanor, the court shall impose "a specific number of months, days or hours" to be served by a defendant, and the court shall also "fix a percentage of the sentence that the defendant shall serve." Tenn. Code Ann. § 40-35-302 (b), (d). No presumptive

minimum sentence exists for a misdemeanor conviction. *State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011). Also, defendants convicted of a misdemeanor are not presumed to be eligible for alternative sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). Instead, the defendant "has the burden of establishing that [she] is suitable for probation by demonstrating that probation will subserve the ends of justice and the best interest of both the public and the defendant." *Sanders*, 2024 WL 1739660, at *2 (citation and internal quotation marks omitted).

To that end, a defendant's sentence must be based on "the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background." *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see also State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). Nevertheless, pursuant to Tennessee Code Annotated section 40-35-103(1), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A)     whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B)     whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C)     whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant."

Our supreme court has also recognized that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citation and internal quotation marks omitted). To that end, a trial court considering probation "should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at *4 (Tenn. Crim. App. June 28, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*. And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5).

In this case, the trial court carefully considered the seriousness of the offense, finding that underage persons, particularly college students, knew the restaurant as a place to obtain alcohol easily and that the video showed the Defendant repeatedly encouraging E.C., who was obviously intoxicated, to drink more despite her reluctance. The trial court is the trier of fact at a sentencing hearing, and this court will not disturb its findings of fact unless the evidence preponderates against these findings. *See State v. Melvin*, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995); *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *6 (Tenn. Crim. App. Sept. 13, 2024), *no perm app. filed*. From our review of the record, the testimony at trial and the video evidence do not preponderate against the trial court's findings.

Moreover, the trial court also found that because the restaurant was well-known for supplying alcohol to underage persons, deterrence warranted a period of confinement. Considering the seriousness of the offense and deterrence together, the trial court acted within its discretion in ordering that the Defendant serve a sentence of six months confinement, which was authorized by section 57-4-203(j)(1). *See State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

In arguing against this conclusion, the Defendant asserts that the trial court erred by applying enhancement factor (3), *i.e.*, that the offense involved more than one victim. *See* Tenn. Code Ann. § 40-35-114(3) (2019). He also argues that the trial court did not give weight to various mitigating factors. We respectfully disagree.

The Defendant misapprehends the role that enhancement and mitigating factors play in misdemeanor sentencing. Unlike felony sentencing, these factors are not used to determine the length of a misdemeanor sentence. As this court has expressly recognized, "A trial court is merely required to consider statutory enhancement and mitigating factors in calculating the percentage of the misdemeanant's sentence to be served in confinement, not the length of his or her sentence." *State v. Hostetter*, No. M2003-02839-CCA-R3-CD, 2004 WL 3044895, at *9 (Tenn. Crim. App. Dec. 29, 2004) (emphasis added), *perm. app. denied* (Tenn. May 9, 2005); *see also Sanders*, 2024 WL 1739660, at *4 (recognizing that enhancement and mitigating factors are relevant to fixing the "percentage of the sentence that the defendant shall serve" before being eligible for various rehabilitative programs).

Although the Defendant takes issue with other aspects of his sentence, the Defendant does not argue that the trial court improperly fixed the percentage of service before the application of rehabilitative credits. As such, although we agree that enhancement factor (3) cannot be applied where the presentment names a specific victim, *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002), we generally do not address issues that

the Defendant has not properly raised and appropriately argued. *See State v. Bristol*, 654 S.W.3d 917, 924-25 (Tenn. 2022); *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (recognizing that the appellant should identify "those issues most amenable to success on appeal and present those issues to the court supported by citation to authorities and appropriate references to the record").

Of course, even in felony cases, "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing." *Francis*, 2024 WL 4182870, at *5 (citation and internal quotation marks omitted). The trial court here followed the proper sentencing procedures and sentenced the Defendant to a sentence within the appropriate statutory range for the conviction. The sentence is also otherwise consistent with the purposes and principles of sentencing, *see* Tenn. Code Ann. §§ 40-35-102, -103, and the "mere disagreement with the trial court's weighing of the properly assigned enhancement and mitigating factors is no longer a ground for appeal." *Bise*, 380 S.W.3d at 706.

In our view, the trial court's sentencing decision was carefully considered. It weighed the applicable sentencing factors and imposed a sentence consistent with the purposes and principles of sentencing. We conclude that the trial court acted within its discretion to impose a split confinement sentence. The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we conclude that the offense of furnishing alcohol to a person under twenty-one years of age is a strict liability offense. As such, we hold that the trial court correctly instructed the jury on the essential elements of the offense and properly excluded evidence that the other person used a false identification. We also hold that the Defendant waived any claim of prosecutorial misconduct and that the trial court acted within its discretion in imposing a split-confinement sentence. We respectfully affirm the judgment of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE

20